BREAUX, C. J.
Plaintiff claims damages ■of defendant in tlie sum of $10,000.
He recovered judgment for $1,000 in the ■district court. Defendant appeals.
Plaintiff had been engaged in the work of a longshoreman for many years. The defendants are stevedores.
The steamship Garrick was loading a ■cargo of coffee. Six of the gang of workmen usually employed for such work — they were longshoremen — were employed by the foreman of the defendant. They commenced by erecting a necessary stage leading to and from the hatch of the ship to the wharf. This stage rested upon two trestles. It (the stage) was about 4 feet in width. The two trestles, or land supports of the stage, were at a distance one from the other of about 12 feet.
The two trestles were connected by a board measuring about 2 inches thick by 6 inches in width. It was this board- that broke. Planks had been laid from one trestle to the other, and in consequence of the break the staging-fell a distance of about 12 feet. The plaintiff was on this stage, at work in unloading the coffee, when it fell, and in his fall with it he received a broken arm. The planks and other materials with which this stage was constructed belonged to defendants, and were owned by them, to be used in constructing such stages. There were no others from which to select. The front piece of pine which connected the uprights was rendered defective by a knot at which it broke. The stage was erected and ■completely rigged by the six men, before mentioned, about an hour before plaintiff was employed and put to work in unloading the -coffee.
Defendants state that the port’s custom prevents the stevedores from employing others than members of the Longshoremen’s Association, unless they are all engaged, which is practically never the case, and that, being thus handicapped, the stevedore is not a free agent in the selection of his men. It follows that generally he may employ as many as he chooses from the association, but very seldom he is at liberty to employ other labor.
To unload the ship, the foreman employed six workmen to rig the ship to be unloaded, and then other workmen were employed, and the unloading was proceeded with. The plaintiff was called in and employed after the rigging, as before mentioned. He was of the second gang of workmen employed.
We assume that, while this rigging was going on, the plaintiff, who was seated near, was on the watch for work.
The foregoing facts give rise to the following question for decision: Whether defendants were careful or downright negligent, and whether the danger was apparent, are the questions which arise out of the foregoing state of facts.
As relates to care, it should have been more particularly exercised at the beginning of the work of erecting the stage, and in selecting pieces of lumber for crosspieces sufficiently' sound and strong to hold up the board resting thereon.
One of these principal pieces was rather small. Besides, it was weakened very much by a knot, at which it broke and fell. This was so evident that it has given rise to the question whether it was not sufficiently apparent to have it considered an apparent danger, which the workman should have seen and avoided, by notifying the master or leaving the employment. While it is not an apparent danger requiring such an action t on the part of the workmen, it is manifestly poor, weak, and insufficient staging.
Immediately after it had been erected, the foreman, who was not present at the time the rigging was done, stepped on this stage, and walked heavily and stamped, and said, *1043 in. substance, that it was not strong enough to hold, up the men, and the burden they would have to carry in doing the work in his charge.
This was heard by one of the men (known as the “derrickman”) by whom it had been erected, who immediately replied that it was amply strong. It was the old story of workmen — “that he and the other men with him had to work on it, and knew what they were about.” The foreman, as frequently happened, did not choose to exercise his judgment, but accepted that of the workmen, who are always slow in owning that anything they have done is poor or weak work.
The result was, as before stated, the break, and plaintiff was injured after working about one hour. A man of ordinary care and caution would not have taken such a statement of workmen. He would have followed out his own ideas in the premises, and would have seen that that which in his judgment was weak was made sufficiently strong.
The foreman should not assume superior knowledge of the workman. His acts bind the master in case of accident His inaction or want of care may result in damages for which bis employer may be made liable. In a matter of importance he should be satisfied after having scrutinized the work requiring such action.
If in any way the custom prevailing among longshoremen has the effect of preventing the master from requiring good and safe work, it will have to be changed or modified, and not the rules of law which fix the responsibility on the master or his representative. The maxim respondeat superior stands in the way of possibility of finding protection for the one in charge by invoking the superiority of authority in the workmen.
It must be borne in mind that plaintiff was not working for defendants during the whole time it took to erect the stage and rig the ship to unload. He was sitting near by, waiting for an opportunity to answer to the call for additional workmen. He may have seen some of the boards as they were taken up and carried to the ship to be used, in the stage. He admits that he saw some of these boards at the time. We do not infer that the average workman, not himself engaged in the work, would concern himself about an unsound board. The evidence does-not show that he knew anything about it, or that it was brought to his attention in any way. He took no part in pulling up the contrivance known as a stage.
The fellow-workman doctrine is also in- ■ voked to some extent, at least.
The superior — the one upon whom it devolved to see that everything in the way of appliances was safe — was the foreman, and not particularly the mere hands working under his employment and subject to his orders. It is not possible to shift the responsibility from the foreman to the men, and then apply the fellow-workman rule.
This is not an instance of a gang of workmen engaged in the common employment of unloading a vessel. Plaintiff was called in to work by the foreman on a platform or stage after it had been erected, and which he had a right to infer had been safely erected.
Besides, through the foreman the master must be held to have been notified of the weakness of the stage, and therefore the responsibility is traced directly to the former.
It remains for us to fix the amount of the damages.
We are led to believe by the testimony that plaintiff was not permanently injured. While at work, he earned 40 cents an hour. Immediately after the injury he was sent to the hospital, where he remained about an hour; the time required to set his arm and bandage it. He subsequently was in the hands of a physician, who testified on-the trial that, to his knowledge and ob- *1045 serration, the plaintiff did not suffer over four or six weeks.
It is ordered, adjudged, and decreed that the judgment appealed from be, and it is affirmed.